■ CHRISTINE DELANEY et al., Respondents, v GEORGE C. MUSCILLO, Appellant and Third-Party Plaintiff-Appellant. HOFFMAN-LAROCHE, INC., et al., Third-Party Defendants-Appellants, et al., Third-Party Defendants.—Order, Supreme Court, Bronx County (Irving Silbowitz, J.), entered January 7, 1987, which, *inter alia,* denied motions by defendant-appellant and third-party defendants-appellants for summary judgment

dismissing the complaint, unanimously reversed, on the law, and summary judgment granted and the complaint dismissed, without costs.

Plaintiffs commenced this action against defendant physician, George Muscillo, on May 5, 1979, alleging medical malpractice in his care and treatment of Christine Delaney and derivative claims on behalf of her husband, John Delaney. In or about December 1983, defendant impleaded various medical laboratories and individual officers thereof, including the third-party defendants-appellants, Hoffman-LaRoche, Inc., Roche Clinical Labs, William Tatlock, and Louis Winkelman.

Dr. Muscillo, an obstetrician-gynecologist, was first consulted by plaintiff Christine Delaney for prenatal care in February or March 1972. Since this was plaintiff's first pregnancy, Dr. Muscillo took a blood sample on May 30, 1972, to determine whether she had Rh negative blood, and sent it to the third-party defendant laboratories for analysis. Because a woman with Rh negative blood is likely to produce antibodies which may threaten subsequent births if her first child is Rh positive, an accurate test result is critical. *(See, Berg v New York Socy.,* 136 NYS2d 528, *revd* 286 App Div 783, *revd* 1 NY2d 499.)* As a measure against this known risk, doctors whose patients are found to be Rh negative administer a drug known as RhoGAM within 72 hours of the first birth to prevent the buildup of the potentially harmful antibodies.

On the basis of the May 1972 test, Mrs. Delaney was incorrectly diagnosed as having Rh positive blood, and therefore received no RhoGAM treatment following the birth of her healthy first child on September 26, 1972. Thereafter, Mrs. Delaney, still unaware of her actual Rh negative status, consulted Dr. Muscillo for a second pregnancy, which resulted in a stillbirth in March 1975, and then a third pregnancy, which resulted in a stillbirth on October 10, 1976. Dr. Muscillo last saw plaintiff when she visited him for a postpartum checkup on December 10, 1976.

Following the discovery that her blood was in fact Rh negative, plaintiff commenced this action against Dr. Muscillo. She also placed herself under the care of another physician for the careful management of her fourth pregnancy. Despite various precautions, plaintiff gave birth to a brain-damaged child on April 20, 1986.

In this appeal, defendant physician and third-party defendants-appellants laboratories challenge the denial of their motions for summary judgment dismissing the complaint on

the ground that the action accrued in 1972 and is therefore barred by the three-year Statute of Limitations provided in CPLR 214. In ruling that plaintiffs commenced their action within the applicable time period, the lower court found that Dr. Muscillo's care of Mrs. Delaney through three pregnancies constituted a continuous course of treatment for an ongoing condition, namely, the Rh factor, and that the Statute of Limitations was therefore tolled until that course of medical treatment came to an end on plaintiff's last visit of December 10, 1976. Pursuant to this formulation, the commencement of the action on May 5, 1979 would fall within the 2½-year period prescribed by CPLR 214-a, which governs medical malpractice claims accruing after July 1, 1975.

A review of the facts of this case compels us to disagree with the critical date of accrual, as determined by the court below. We recognize the well-established principle that a medical malpractice claim, which generally accrues on the date of the alleged wrongful act or omission *(Davis v City of New York,* 38 NY2d 257, 259), will not accrue for Statute of Limitations purposes until the end of treatment that has "run continuously" and is "related to the same original condition or complaint". *(Borgia v City of New York,* 12 NY2d 151, 155.) In the facts before us, however, the continuous treatment exception to the rule may not be applied, for there was neither continuity of treatment nor identity of condition in defendant physician's care of plaintiff during the three pregnancies.

It is significant that at no time subsequent to the administration of the 1972 blood test was the Rh factor a "condition or complaint" to which the defendant physician's attention was directed. Rather, plaintiff's consultations with defendant subsequent to the first pregnancy were solely for the purpose of receiving routine obstetric care during a second and then a third pregnancy. In such circumstances, the continuous treatment doctrine may not be invoked, since "[t]he rationale for the exception rests, in part, upon the principle that where a patient is being treated continuously for one condition, he or she should not have to interrupt that treatment in order to sue the physician" *(Manno v Levi,* 94 AD2d 556, 560, *affd* 62 NY2d 888).

Nor may we accept, for the purpose of tolling the Statute of Limitations in this matter, the continuing failure of defendant to ascertain that plaintiff's blood was Rh negative since, "the continuing nature of a diagnosis does not itself amount to continuous treatment". *(McDermott v Torre,* 56 NY2d 399, 406.)

Accordingly, we find that plaintiffs' claims accrued at the time of the blood test in May 1972, and that this action, commenced in May 1979, is barred by the three-year Statute of Limitations prescribed in CPLR 214. To the extent that a ruling previously made in this matter and affirmed by this court on January 31, 1984 [99 AD2d 688] may be in conflict with this decision, we note that our earlier determination was without the benefit of the subsequently taken deposition of plaintiff Christine Delaney, which clearly demonstrates that the obstetric care given to her for each pregnancy was discrete and involved no continuous course of treatment.

In light of our determination that summary judgment must be granted and the complaint dismissed, we need not address defendants' remaining claims. Concur—Sullivan, J. P., Ross, Kassal, Rosenberger and Smith, JJ.