OPINION OF THE COURT
Yvonne Gonzalez, J.
Plaintiff, Hattie Chisolm (hereinafter Chisolm), underwent *70 surgery on her left breast for removal of a benign tumor on September 11, 1990, at the facilities of codefendant New York Presbyterian Hospital sued here as New York Hospital (hereinafter Hospital). The surgery for that procedure was performed by codefendant, Dr. William T. Curry. Defendant Guttman Breast Diagnostic Institute, Inc. (hereinafter Guttman), is a facility where clinical breast examinations and mammography studies were performed upon Chisolm. Martha A. Kessler (hereinafter Kessler) is the executrix of the estate of Dr. Thomas Mullin (hereinafter Mullin), who was Chisolm’s gynecologist. This action arose as a result of injuries allegedly sustained when a foreign object was left behind within Chisolm’s left breast during the surgery of September 11, 1990. The claims of plaintiff Arthur Chisolm are derivative.
Guttman moves pursuant to CPLR 3212 for summary judgment with respect to any and all of plaintiffs’ claims that are based upon acts and/or omissions of Guttman which occurred before September 30, 1992 on the grounds that any and all such claims are time barred by the Statute of Limitations. Similarly, Kessler cross-moves pursuant to CPLR 3212 for summary judgment with respect to any and all of plaintiffs’ claims that are based upon acts and/or omissions of Mullin which occurred before September 30, 1992 on the grounds that any and all such claims are time barred by the Statute of Limitations. The Hospital cross-moves for summary judgment dismissing the complaint in its entirety as against the Hospital with prejudice and directing the clerk of the court to enter judgment accordingly on behalf of the Hospital or alternatively compelling plaintiffs to respond to a demand for a bill of particulars with respect to res ipsa loquitur or striking the res ipsa loquitur claim from the complaint.
As a preliminary matter, plaintiffs argue that the cross motions of the Hospital and Kessler are untimély pursuant to CPLR 3212 (a). However, said cross motions were made upon the original timely motion of Guttman and the untimeliness is de minimis. Plaintiffs can demonstrate no prejudice, as a trial in this matter will not be delayed by the exercise of judicial discretion permitted in CPLR 3212 (a) to extend the time to move for summary judgment. (Rossi v Arnot Ogden Med. Ctr., 252 AD2d 778 [3d Dept 1998].) Accordingly, the cross motions for summary judgment of the Hospital and Kessler are deemed timely, nunc pro tunc.
*71 GUTTMAN MOTION AND KESSLER CROSS MOTION
Both the Guttman motion and Kessler cross motion seek summary judgment pursuant to CPLR 3212 with respect to any and all of plaintiffs’ claims based upon acts and/or omissions of the respective defendants which occurred before September 30, 1992 on the grounds that any and all such claims are time barred by the Statute of Limitations.
CPLR 214-a provides: “An action for medical, dental or podiatric malpractice must be commenced within two years and six months [from the date] of the act, omission or failure complained of or last treatment where there is continuous treatment for the same illness, injury or condition which gave rise to the said act, omission or failure; provided, however, that where the action is based upon the discovery of a foreign object in the body of the patient, the action may be commenced within one year of the date of such discovery or of the date of discovery of facts which would reasonably lead to such discovery, whichever is earlier. For the purpose of this section the term ‘continuous treatment’ shall not include examinations undertaken at the request of the patient for the sole purpose of ascertaining the state of the patient’s condition. For the purpose of this section the term ‘foreign object’ shall not include a chemical compound, fixation device or prosthetic aid or device.”
The date September 30, 1992 is a date that is 2 years and 6 months prior to the commencement of Chisolm’s action. Chisolm argues that the 2-year and 6-month limitation period is inapplicable with respect to the affirmative defenses of Guttman and Kessler on three independent grounds: (1) the statutory “foreign object” toll of the Statute of Limitations, (2) the statutory “continuous treatment” toll of the Statute of Limitations, and/or that (3) Guttman and Kessler should be equitably estopped from asserting the affirmative defense of Statute of Limitations.
(1) The “Foreign Object” Toll of the Statute of Limitations
It is uncontroverted that neither Guttman nor Mullin were involved in any manner in the placement of the foreign object in the left breast of Chisolm. Rather, Chisolm’s claims against Guttman and Mullin are essentially based upon said defendants’ negligence in failing to detect the foreign object in Chisolm’s left breast and communicating that discovery to Chisolm. At issue is whether the “foreign object” toll applies solely to medical malpractice claims against those parties responsible for the placement of the foreign object in the *72 plaintiffs body, or is the “foreign object” toll more broadly applicable to acts and/or omissions occurring subsequent to the introduction of the foreign object in the body of a plaintiff. This appears to be an issue of first impression.
In Rodriguez v Manhattan Med. Group (77 NY2d 217 [1990]) a physician failed to detect the presence of a previously inserted I.U.D. Plaintiff brought her claims against the physician under the “foreign object” toll of the Statute of Limitations. The Court held that a fixation device, such as an I.U.D., does not become a foreign object when a physician retained to remove it negligently fails to do so. In so holding, the Court reasoned that “a negligent failure to detect the continued presence of a previously inserted device, is most logically classified as one involving misdiagnosis — a category for which the benefits of the ‘foreign object’ discovery rule have routinely been denied.” (Supra, at 223.) Plaintiffs correctly identify Rodriguez as a “fixation device” case, however, the reasoning employed by the Court of Appeals in Rodriguez is applicable to the case at bar where Guttman and Mullin failed to detect the continued presence of a previously inserted foreign object in Chisolm’s left breast. “In the final analysis, this case is no different from any other medical malpractice action in which it is claimed that a physician negligently failed to detect a condition within the patient’s body requiring treatment or surgical removal.” (Supra, at 224.)
Further, the “foreign object” section of CPLR 214-a is a codification of Flanagan v Mount Eden Gen. Hosp. (24 NY2d 427 [1969]). (McLaughlin, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C214-a:3, at 602.) In Flanagan, a physician left a clamp in the plaintiffs abdomen in 1958. The clamp was discovered in 1966 via x-ray. The Court held that “where a foreign object has negligently been left in the patient’s body, the Statute of Limitations will not begin to run until the plaintiff could have reasonably discovered the malpractice.” (Supra, at 431.) The Court of Appeals reasoned that in “foreign object” cases, plaintiffs’ claims rest “solely on the presence of a foreign object within her abdomen” and do not raise credibility issues nor rest on professional diagnostic judgment or discretion. (Supra, at 431.) In contrast, Chisolm’s claims against Guttman and Kessler clearly involve issues of professional diagnostic judgment, raise credibility issues and are not solely predicated upon the presence of a foreign object in Chisolm’s left breast. To construe CPLR 214-a as affording Chisolm the benefit of the “foreign object” toll this court must *73 ignore the reasoning of the Court of Appeals in Flanagan as well as Rodriguez (supra) and its progeny. This court declines to do so. Accordingly, it is held that the “foreign object” toll is not applicable to the claims of Chisolm as against codefendants, Guttman and Kessler.
(2) The “Continuous Treatment” Toll of the Statute of Limitations
“A medical malpractice claim generally accrues on the date of the alleged wrongful act or omission and is governed by a 2V2-year Statute of Limitations (Davis v City of New York, 38 NY2d 257, 259; CPLR 214-a). Under the continuous treatment doctrine exception * * * the 21/2-year period does not begin to run until the end of the course of treatment ‘ “when the course of treatment which includes the wrongful acts or omissions has run continuously and is related to the same original condition or complaint.” ’ ” (Nykorchuck v Henriques, 78 NY2d 255, 258 [1991].)
Plaintiffs argue that the “continuous treatment” toll is applicable to their claims against both Guttman and Kessler. With respect to Guttman, plaintiffs state that Guttman kept old mammography films to compare with new films, and Guttman requested follow-up information from other physicians. Plaintiffs argue these facts establish.an ongoing surveillance and treatment of Chisolm’s breasts. In a like manner, plaintiffs argue that since Mullin examined, made notes and diagramed Chisolm’s breast on several visits there was a continuous course of treatment.
“Continuous treatment” involves more than a doctor-patient relationship. “A patient is not entitled to the benefit of the toll in the absence of continuing efforts by a doctor to treat a particular condition because the policy reasons underlying the continuous treatment doctrine do not justify the patient’s delay in bringing suit in such circumstances.” (Massie v Crawford, 78 NY2d 516, 519 [1991].) Chisolm was not under treatment for the “particular condition”, i.e., a foreign object left in her left breast by either Guttman or Mullin and therefore the “continuous treatment” toll is inapplicable. Furthermore, Chisolm’s case is analogous to the plaintiff’s case in Nykorchuck in that “the gravamen of plaintiff’s claim is not that the doctor performed certain negligent acts or omissions during the course of treatment for her breast condition, but rather that the doctor was negligent in failing to establish a course of treatment at all. While the failure to treat a condition may *74 well be negligent, we cannot accept the self-contradictory proposition that the failure to establish a course of treatment is a course of treatment”. (Nykorchuck v Henriques, supra, at 259.)
The gravamen of Chisolm’s case against both Guttman and Mullin is that they failed to detect a foreign object in Chisolm’s left breast. This court cannot accept the self-contradictory proposition that Guttman and Mullin’s failure to detect the foreign object upon repeated visits, constituted “continuous treatment” thereof. Accordingly, it is held that the “continuous treatment” toll is not applicable to the claims of Chisolm as against codefendants, Guttman and Kessler.
(3) Equitable Estoppel
It is the rule that a defendant may be estopped from asserting a Statute of Limitations defense when the plaintiff was induced by fraud, misrepresentation or deception to refrain from filing a timely action. (Simcuski v Saeli, 44 NY2d 442 [1978].) Plaintiffs argue by way of attorney’s affirmation that codefendants Guttman and Mullin affirmatively concealed their 1992 malpractice from Chisolm by essentially remaining silent and therefore said codefendants should be estopped from asserting the Statute of Limitations as a defense. Even if, arguendo, Guttman and Mullin remained silent with respect to their alleged 1992 malpractice, plaintiffs’ argument fails on three independent and sufficient grounds. (1) Neither plaintiffs’ amended complaint nor bill of particulars has a colorable claim of fraud, misrepresentation, deception or concealment. (2) The attorney’s affirmation, without any factual support in admissible form is insufficient on its face to defeat summary judgment. (3) Moreover, “it must be established that the defendants knew or had reason to know of the facts of their malpractice and of the injury suffered in consequence thereof. Also, knowing them to be false, the defendants thereafter would have to have made material, factual misrepresentations to the patient with respect to the subject matter of the malpractice on which the patient, justifiably relied.” (Carucci v Maimonides Med. Ctr., 226 AD2d 663 [2d Dept 1996].)
The attorney’s affirmation, does not cite to any evidence nor even allege that the codefendants made any material and/or factual misrepresentations upon which the patient justifiably relied. Therefore, plaintiffs failed to plead or establish the elements necessary to estop codefendants from asserting a Statute of Limitations defense.
*75 NEW YORK HOSPITAL CROSS MOTION
The Hospital cross-moves pursuant to CPLR 3212 for summary judgment dismissing the complaint in its entirety as against it and directing the clerk of the court to enter judgment accordingly on behalf of the Hospital or alternatively compelling plaintiffs to respond to a demand for bill of particulars with respect to res ipsa loquitur or striking the res ipsa loquitur claim from the complaint. The Hospital moves for summary judgment on the grounds that even if, arguendo, any negligence was attributable to the Hospital for plaintiffs injuries, the Statute of Limitations has run. With respect to the foreign object remaining in Chisolm’s left breast for which a toll of the Statute of Limitations may exist, the Hospital contends that the physicians responsible for the insertion and removal of the locating device were not employees of the Hospital and therefore a “foreign object” toll is inapplicable to plaintiffs’ claims against it.
The Hospital’s contention that its motion should be granted as a matter of law on the grounds that plaintiffs failed to offer an affidavit of a medical expert is meritless. “Widespread consensus exists * * * that a narrow category of factually simple medical malpractice cases requires no expert to enable the jury reasonably to conclude that the accident would not happen without negligence. Not surprisingly, the oft-cited example is where a surgeon leaves a sponge or foreign object inside a plaintiffs body.” (Kambat v St. Francis Hosp., 89 NY2d 489, 496 [1997].) The gravamen of plaintiffs’ claim is that a “foreign object” was negligently left in plaintiffs left breast.
Pursuant to an order of Justice Jerry L. Crispino dated January 27, 1998, plaintiffs were given leave to amend their complaint to assert res ipsa loquitur as a theory of liability. Plaintiffs have failed to particularize their res ipsa loquitur theory of liability pursuant to a second demand for a bill of particulars dated February 27, 1998. Accordingly, the Hospital’s cross motion is granted to the limited extent of directing the plaintiffs to particularize their res ipsa loquitur theory of liability pursuant to a second demand for a bill of particulars dated February 27, 1998.
RELIEF GRANTED
For all of the above reasons, the motion of Guttman and the cross motion of Kessler for summary judgment with respect to any and all of plaintiffs’ claims that are based upon acts and/or admissions of Guttman or Mullin which occurred before *76 September 30, 1992 on the grounds that any and all such claims are time barred by the Statute of Limitations is granted. The Hospital’s cross motion is granted to the limited extent of directing the plaintiffs to particularize their res ipsa loquitur theory of liability.